Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

ARISMENDY RAVELO-SANTOS,

        Defendant.

Criminal Action No.: 24-0490 (ES)

**AMENDED OPINION**

SALAS, DISTRICT JUDGE

Before the Court is defendant Arismendy Ravelo-Santos's ("Defendant" or "Mr. Ravelo-Santos") motion to dismiss the indictment (D.E. No. 66 ("Indictment")) for alleged violations of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, and his Sixth Amendment right to a speedy trial. (D.E. No. 79 ("Mot." or "Motion to Dismiss"); D.E. No. 79-1 ("Def. Mov. Br.")).   In the alternative, Defendant moves to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 48(b).  (Mov. Br. at 13–14).  The Government opposed, and Defendant replied.  (D.E. No. 83 ("Gov. Opp."); D.E. No. 87 ("Def. Reply")).  After reviewing the parties' submissions and expressing its concerns, the Court issued an order requesting supplemental briefs.  (D.E. No. 94). Thereafter, the parties filed their supplemental submissions in accordance with the Court's order. (D.E. No. 95 ("Gov. Supp."); D.E. No. 96 ("Def. Supp."); D.E. No. 97 ("Gov. Reply Supp.")). The Court carefully considered the parties' submissions and decides the motions without oral argument.  *See United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009); *see also* L. Civ. R. 78.1(b); L. Crim. R. 1.1.  For the reasons set forth below, the Defendant's Motion to Dismiss the Indictment is **GRANTED in-part** and **DENIED in-part**.  The Indictment is **DISMISSED** *without prejudice*.

## I.    BACKGROUND

On January 26, 2021, the Government filed a one-count criminal complaint against Defendant for conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and in violation of 21 U.S.C. § 846. (D.E. No. 1 ("Complaint") at 2). The events that gave rise to the Complaint occurred in or around September 2019 and October 2019. (*Id.* at 2–3).[1] On January 29, 2021, following Defendant's arrest, he appeared before the Honorable Leda D. Wettre, U.S.M.J. (D.E. Nos. 1 & 12). On the same day, Judge Wettre released Defendant on bail and set conditions of his pretrial release. (D.E. No. 16).

***Conditions of Pretrial Release.*** Defendant's initial conditions of release restricted his travel to New Jersey and New York, with travel to the latter limited to court appearances only. Judge Wettre also placed Defendant on home detention as well as location monitoring, and required that he surrender all passports and travel documents, among other restrictions. (D.E. No. 16 at 1–2). On February 16, 2021, Defendant moved to modify his conditions of release to permit business travel to New York. (D.E. No. 21 at 1). Judge Wettre held a hearing and denied Defendant's motion. (D.E. Nos. 22 & 23). On May 24, 2021, Mr. Robert A. Osuna, Esq., appeared on Defendant's behalf. (D.E. No. 27). On July 2, 2021, the Court issued a consent order modifying Defendant's conditions of release by placing Defendant on a curfew and broadening his travel to include New York and Connecticut. (D.E. No. 31). On August 24, 2021, the Court issued a second consent order modifying Defendant's conditions of release, which removed location monitoring. (D.E. No. 36).

---

[1]    Prior to the Complaint in federal court, the State of New Jersey arrested Defendant on various charges, including but not limited to, possession with intent to distribute a controlled dangerous substance. (Mov. Br. at 1–2). On or about November 3, 2021, the state administratively dismissed Defendant's case. (*Id.* at 2).

*Initial Continuance Orders.*    On January 29, 2021, the Court entered its then-existing standing order, originally issued on December 17, 2020, which provided for a continuance excluding time under the Speedy Trial Act of 1974 ("STA") through March 12, 2021, in light of exigent circumstances stemming from the COVID-19 pandemic.  (D.E. No. 19).  On March 11, 2021, the Court extended its COVID-19 continuance order excluding time under the STA through June 1, 2021.  (D.E. No. 24).  On March 29, 2021, Judge Wettre issued a continuance order with the parties' consent for purposes of defense counsel's effective preparation and plea negotiations, which also excluded time under the STA through June 1, 2021.  (D.E. No. 26).[2]  On May 27, 2021, Judge Wettre issued a second continuance order with the parties' consent, which excluded time under the STA through August 1, 2021.  (D.E. No. 28).  On July 27, 2021, Judge Wettre issued a third continuance order with the parties' consent, which excluded time under the STA through October 1, 2021.  (D.E. No. 33).  On September 29, 2021, Judge Wettre issued a fourth continuance order with the parties' consent, which excluded time under the STA through December 3, 2021. (D.E. No. 37).[3]

*Revocation of Pretrial Release.*    On October 8, 2021, United States Pretrial Services ("Pretrial Services") filed a Petition for Action on Conditions of Pretrial Release.  (D.E. No. 39).[4] On October 15, 2021, Judge Wettre held a hearing, revoked Defendant's bail, and ordered Defendant to self-surrender to the Hudson County Jail before 6:00pm on the same day.  (D.E. No. 41 at 3).  Defendant concedes he did not self-surrender as ordered (Mov. Br. at 3 & 8) and on the

---

[2]    Laurie M. Fierro, Esq., Defendant's initial counsel, signed the continuance order dated March 29, 2021. (D.E. No. 26).  Defendant's second counsel, Mr. Osuna, signed all other continuance orders entered in this matter. (D.E. Nos. 28, 33, 37, 53 & 70).

[3]    On December 29, 2021, the Court issued a standing order excluding time under the STA from December 29, 2021, through January 31, 2022, because of exigent circumstances stemming from COVID-19.   (D.E. No. 47). However, as set forth below, Defendant had already absconded when this continuance order took effect.

[4]    It appears Defendant not only traveled outside of New Jersey, but also used "passport information" he previously represented as "lost" to reenter the United States from the Dominican Republic.  (D.E. No. 58 at 2–3).

same day, Judge Wettre issued a warrant for Defendant's arrest (D.E. No. 43).

***Defendant's Absconding & Rearrest.*** Defendant admits that he failed to surrender for approximately 22 months following his bail revocation—i.e., from October 15, 2021, to approximately August 15, 2023, the date of Defendant's rearrest.[5] (Mov. Br. at 8; D.E. No. 54). Defendant has remained in custody since his rearrest on August 15, 2023. (Mov. Br. at 8). On September 11, 2023, 27 days after Defendant's rearrest, Judge Wettre issued a fifth continuance order with the parties' consent, which excluded time under the STA from the date of the order through December 5, 2023. (D.E. No. 53).

***Proceedings Following ReArrest.*** On January 1, 2024, it appears Defendant's then-present matter, proceeding under Case No. 21-mj-13022, was terminated inadvertently. On March 21, 2024, a new AUSA appeared on behalf of the Government and replaced the former AUSA. (D.E. No. 55). On May 2, 2024, Mr. Osuna filed a letter motion seeking bail based on Defendant's near 5-month incarceration without an indictment and well after the last continuance order expired on December 5, 2023. (D.E. No. 56). The very next day, on May 3, 2024, a second AUSA appeared on behalf of the Government (D.E. No. 57); the AUSA who appeared in March 2024 also remained on the case.

On May 15, 2024, Defendant's then-present matter, proceeding under Case No. 21-mj-13022, was reopened. On the same day, the Government opposed Defendant's motion for bail. (D.E. No. 58). On June 5, 2024, Mr. Osuna requested an adjournment of the bail hearing that had been reset from May 17, 2024, to June 6, 2024. (D.E. No. 61). Judge Wettre adjourned the June

---

[5] The parties appear to concede that Defendant was rearrested on August 15, 2023; however, Defendant's arrest warrant reflects an execution date of August 16, 2023. (*Compare* Mov. Br. at 12, Gov. Opp. Br. at 2, Gov. Supp. at 2, *and* Def. Supp. at 5, *with* D.E. Nos. 54 & 63). Consistent with the parties' submissions, the Court refers to the rearrest date as August 15, 2023. In addition, during this period of abscondment, a new Assistant United States Attorney ("AUSA") appeared on behalf of the Government and replaced the prior AUSA. (D.E. No. 52 (Oct. 4, 2022 Notice of Appearance)).

6 bail hearing without a new date.  (D.E. No. at 62).

*Alleged Speedy Trial Violations & Defendant's Indictment.*  On May 15, 2024, Defendant wrote to the Honorable Chief Judge Renée M. Bumb, U.S.D.J.  (D.E. No. 63).[6]  Defendant noted he had been detained without an indictment since August 16, 2023, and alleged violations of his rights under the Fifth and Fourteenth Amendments to the United States Constitution, as well as his Sixth Amendment right to a speedy trial.  (*Id.* (attaching case documents, including Mr. Osuna's May 2, 2024 letter to Judge Wettre)).  On June 17, 2024, Mr. Osuna filed a motion to dismiss the Complaint with prejudice for violation of the STA.  (D.E. No. 64 & D.E. No. 64-1).  On July 10, 2024, Judge Wettre granted the Government's request for an extension to respond to Defendant's motion, citing good cause as "the AUSA assigned to this case [had been] engaged in trial before the Court in another matter"; thus, the Government received an extension until July 29, 2024, to respond to Defendant's motion to dismiss.  (D.E. No. 65 (text order granting extension request[7])).

On July 26, 2024, the Government indicted Defendant on one count of possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (D.E. No. 66 at 1).  On August 1, 2024, the Government wrote to Judge Wettre stating that Defendant's "Speedy Trial Act claims" were moot in light of the Indictment charging Defendant with possession of heroin, i.e., an offense other than conspiracy to possess as alleged in the Complaint.  (D.E. No. 67 at 1).  On August 6, 2024, Judge Wettre terminated Defendant's motion to dismiss the Complaint without prejudice because the Indictment had a new charge and Defendant did "not [ ] object[] to the [Government's] requested relief."  (*Id.*).

*Post-Indictment Proceedings.*  On July 29, 2024, the instant criminal matter, proceeding

---

[6]    Chief Judge Bumb received the letter by mail on May 28, 2024, and docketed it on the same day.  (D.E. No. 63).

[7]    The Government did not docket its request for an extension.

under Criminal Action No. 24-0490, was opened and assigned to the Undersigned.  On August 7, 2024, Defendant appeared before the Honorable James B. Clark, U.S.M.J., for an arraignment and pled not guilty to the one-count Indictment.  (D.E. No. 68).  On the same day, Judge Clark denied bail and issued an order of detention.  (D.E. No. 69).  In addition, Judge Clark entered a final continuance order with the parties' consent, which excluded time under the STA from August 7, 2024, through January 7, 2025.  (D.E. No. 70).

On August 27, 2024, and September 14, 2024, Mr. Osuna and Defendant requested new defense counsel pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  (D.E. Nos. 71 & 74).  On September 25, 2024, the Court appointed a new CJA attorney, Ms. Raquel Renee Rivera, Esq., to represent Defendant.  (D.E. Nos. 72 & 73).  On October 16, 2024, the parties consented to a scheduling order for the exchange of discovery and pretrial motions, which this Court subsequently endorsed.  (D.E. No. 75).

On November 4, 2024, Defendant wrote to the Court *pro se* "requesting a hearing regarding representation of [his] attorney" (D.E. No. 76 at 1), asserting his right to a speedy trial (*id.*; D.E. No. 77), and objecting to the then-existing continuance order (D.E. No. 77).[8]  The Court held a status conference on November 22, 2024, and set trial for January 13, 2025.  (D.E. No. 78).

***Motion to Dismiss the Indictment.***  On December 11, 2024, Defendant filed the instant Motion to Dismiss the Indictment.  (Mot.).  On December 18, 2024, the Government opposed (Gov. Opp.), and on December 22, 2024, Defendant replied (Def. Reply).  On January 7, 2025, the Court issued a Letter Order detailing serious concerns it had with respect to a purported violation of Defendant's Sixth Amendment right to a speedy trial.  (D.E. No. 94).  The Court requested supplemental submissions and adjourned Defendant's trial.  (*Id.*).  Thereafter, the parties filed

---

[8]     These requests were received and docketed on November 13, 2024.

6

supplemental submissions in accordance with the Court's Letter Order.  (Gov. Supp.; Def. Supp.; Gov. Reply Supp.).

## II.    DISCUSSION

### A.    Speedy Trial Act

Pursuant to the STA, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  Furthermore, "[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit . . . such charge against that individual contained in such complaint shall be dismissed or otherwise dropped."  *Id.* § 3162(a)(1).  The STA "requires the dismissal of only those charges that were made in the original complaint that triggered the thirty-day time period."  *United States v. Oliver*, 238 F.3d 471, 473 (3d Cir. 2001).

When calculating the date by which the Government must file an indictment or information, certain periods of delay are excludable under the STA.  *See* 18 U.S.C. § 3161(h).  For example, "[a]ny period of delay resulting from a continuance granted by any judge" is excluded "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  *Id.* § 3161(h)(7)(A).  Similarly, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded.  *Id.* § 3161(h)(1)(D).  Relevant here, the STA also excludes "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness."  *Id.* § 3161(h)(3)(A).

Pursuant to the STA, Defendant argues the Government should have indicted him by

December 8, 2023. (Mov. Br. at 12 (conceding that the period from initial arrest on January 29, 2021, to rearrest on August 15, 2023, was excludable by continuance orders or by virtue of Defendant making himself unavailable pursuant to 18 U.S.C. §§ 3161(h)(7)(A) & (h)(3)(A))). Specifically, Defendant contends he was held in-custody on the Complaint from August 15, 2023, to September 10, 2023, without a continuance order in place for a total of 27 non-excludable days under the STA. (*Id.*). The continuance order entered on September 11, 2023, expired on December 5, 2023, thereby providing the Government with 3 more days to indict Defendant within the 30-day allotted timeframe under the STA, absent a continuance order or other excludable action. (*Id.*). No additional continuance orders or motions were entered. (*See id.* at 12–13). The Government indicted Defendant on a new charge over 7 months later, on July 26, 2024. (D.E. No. 66).

The Government opposes, arguing that Defendant's Motion to Dismiss the Indictment must be denied under the STA because the possession charge in the Indictment "was not contained in the [C]omplaint" such that "any pre-Indictment [STA] violation does not affect that charge [in the Indictment]." (Gov. Opp. at 3). In addition, the Government asserts "[t]his principle likewise applies where, as here, a conspiracy charge and substantive charge are predicated upon overlapping conduct." (*Id.*). As set forth below, the Court agrees with the Government in that no STA violation occurred with respect to the charge in the Indictment.

The Third Circuit has made clear that its "review of decisions by other courts of appeals reveal[ed] a consensus that the Speedy Trial Act requires the dismissal of only those charges that were made in the original complaint that triggered the thirty-day time period." *Oliver*, 238 F.3d at 473 (first citing *United States v. Miller*, 23 F.3d 194, 199 (8th Cir. 1994) ( "A defendant's arrest on one charge does not necessarily trigger the right to a speedy trial on another charge filed after his arrest."); and then citing *United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir.1990) ("18

U.S.C. § 3162(a)(1) only requires the dismissal of the offense charged in the complaint . . . "))
(collecting additional cases).  In addition, *Oliver* noted how "courts have rejected the application
of the transactional test . . . and point[ed] out that Congress itself considered and rejected this
option."  *Id.* (first citing *United States v. Derose*, 74 F.3d 1177, 1184 (11th Cir. 1996) ("Congress
considered and declined to follow the suggestion that the Speedy Trial Act's dismissal sanctions
should be applied to a subsequent charge if it arose from the same criminal transaction or event as
those detailed in the initial complaint or were known or reasonably should have been known at the
time of filing the initial complaint."); and then citing *United States v. Napolitano*, 761 F.2d 135,
137 (2d Cir. 1985) ("[T]he legislative history of the Act clearly indicates that Congress considered
and rejected defendant's suggestion that the Act's dismissal sanction be applied to subsequent
charges if they arise from the same criminal episode as those specified in the original complaint or
were known or reasonably should have been known at the time of the complaint.")).

Here, regardless of the factual nexus between the one-count Complaint and one-count
Indictment, the Government did not violate Defendant's right to a speedy trial under the STA with
respect to the charge in the Indictment because the Indictment charged Defendant with one count
of ***possession*** with intent to distribute narcotics while the Complaint charged Defendant with one
count of ***conspiracy*** to possess with intent to distribute narcotics.  (*Compare* Indictment at 1, *with*
Complaint at 2–3); *see, e.g.*, *United States v. Chukwuma*, 454 F. App'x 56, 58–61 (3d Cir. 2011)
(rejecting the "'gilded exception' whereby a timely-brought charge that merely 'embellishes' an
untimely charge can be dismissed under the Act" and finding that because "the Count 1 conspiracy
charge was not contained in the original untimely complaint, it d[id] not independently run afoul
of the Speedy Trial Act"); *see also United States v. Hart*, 91 F.4th 732, 740–41 (4th Cir. 2024)
("[T]he four charges that later appeared in the second superseding indictment—Counts One

through Four—are safe, because they were never subject to the pre-indictment speedy-trial clock in the first place.").  Accordingly, Defendant's Motion to Dismiss the Indictment for violation of the STA is **DENIED**.

### B.    Sixth Amendment

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  Deprivation of a defendant's Sixth Amendment speedy trial right requires dismissal of the indictment with prejudice.  *Barker v. Wingo*, 407 U.S. 514, 522 (1972); *United States v. Alvin*, 30 F. Supp. 3d 323, 350 (E.D. Pa. 2014) ("The remedy for a Sixth Amendment speedy trial violation is to dismiss the indictment with prejudice, and that is the remedy that this Court will impose." (citing *United States v. Velazquez*, 749 F.3d 161, 167 (3d Cir. 2014))).

To determine whether the constitutional right to a speedy trial has been violated, courts consider: "(1) the length of the delay, (2) the reasons for delay, (3) whether, in due course, the defendant asserted his right to a speedy trial and (4) the actual prejudice the defendant suffered as a result." *United States v. Dent*, 149 F.3d 180, 184 (3d Cir. 1998) (citing *Barker*, 407 U.S. at 530). In *Barker*, the Supreme Court noted how none of the above factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  407 U.S. at 533. Instead, the factors must be considered together along "with such other circumstances as may be relevant."  *Id.*

### 1.    Length of Delay

The first factor under *Barker* asks whether the delay is of a sufficient length to trigger an analysis of the remaining three factors.  Thus, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Barker*, 407 U.S. at 530.  "The length of delay which is presumptively prejudicial and which triggers

10

plenary inquiry into the circumstances surrounding the delay will vary with the particular features of each case." *Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir. 1991) (citing *Barker*, 407 U.S. at 531). Nonetheless, "lower courts have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

Defendant argues that "delay is measured from the date of formal accusation, i.e., from the earliest date of arrest or indictment until the commencement of trial." (Mov. Br. at 7). Accordingly, Defendant maintains the calculation for delay is measured from January 29, 2021, the date of his initial arrest. (*Id.*). The Government asserts Defendant's Sixth Amendment right attached only upon the issuance of the Indictment on July 26, 2024, with respect to the current charge. (Gov. Opp. at 5; Gov. Supp. at 4–5).

The Court agrees with Defendant and finds that delay should be measured from the date of his initial arrest on January 29, 2021. *See Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) ("[T]he delay is measured from the date of formal accusation, *i.e.*, from the earliest date of arrest or indictment until the commencement of trial."); *see also Velazquez*, 749 F.3d at 183 ("It is thus well established that the constitutional speedy trial clock does not start for an individual who has ***not yet been arrested*** until an indictment has issued." (emphasis added)); *United States v. Clarke*, No. 16-3031, 2022 WL 17691562, at *4 (3d Cir. Dec. 15, 2022) ("[W]e consider the length of delay, which is measured 'from the date of arrest or indictment, whichever is earlier, until the start of trial.'" (quoting *United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014))).

The circumstances of this case present a unique set of facts that, under the Government's interpretation, would allow the Government to restart the Sixth Amendment speedy trial period when new charges arise from the same conduct that formed the basis of a prior arrest or criminal complaint. This approach has raised concerns among various Courts of Appeals as a run-around

to the speedy trial clause. *See, e.g.*, *United States v. Villa*, 70 F.4th 704, 714–15 (4th Cir. 2023) (assessing case law from Circuit Courts of Appeals and commenting that "when charges in a later indictment merely build off the first indictment or the conduct underlying it, courts tend to calculate the length of pretrial delay from the arrest or first indictment" to guard against the concern that "the government will use new or superseding indictments, with new or modified charges arising from the same conduct as the initial arrest and indictment, to avoid the strictures of the Speedy Trial Clause"). Indeed, this Court shares the concern highlighted in *Villa*, particularly given the events following Defendant's rearrest (including incarceration without continuances) and the circumstances surrounding the Indictment, which charged Defendant with a new offense premised on the same conduct in the Complaint. Thus, the Court finds persuasive guidance from Circuit Courts of Appeals that have declined to restart the Sixth Amendment speedy trial period when new charges arise from the same conduct underlying an initial arrest or indictment. *See Villa*, 70 F.4th at 714–15 (first citing *United States v. Handa*, 892 F.3d 95, 106–07 (1st Cir. 2018); and then citing *United States v. Black*, 918 F.3d 243, 259 (2d Cir. 2019); and then citing *United States v. DeTienne*, 468 F.2d 151, 155 (7th Cir. 1972); and then citing *United States v. Bailey*, 111 F.3d 1229, 1236 (5th Cir. 1997)).

Accordingly, in assessing the length of delay to determine whether further inquiry is warranted in this case, the Court calculates the delay from the date of Defendant's initial arrest on January 29, 2021, through at least December 11, 2024, the date of his moving brief on the instant Motion to Dismiss the Indictment. Because this period amounts to approximately 46.5 months, the Court will analyze the remaining *Barker* factors. *See, e.g.*, *Doggett*, 505 U.S. at 652, n.1 (recognizing that post-accusation delay is "'presumptively prejudicial' at least as it approaches one year" and triggers full *Barker* analysis); *Hakeem*, 990 F.2d at 760 ("[A] delay of 14 months is . . .

not dispositive in and of itself, but is sufficiently lengthy to warrant an inquiry into the other facts.") (internal quotations omitted).

### 2.    Reasons for Delay

The reason for the delay is "[t]he flag all litigants seek to capture . . . ." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).  The government bears the burden to justify the delay in bringing a defendant to trial.  *United States v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009) (citing *Hakeem*, 990 F.2d at 770).  In addressing this factor, the Court must evaluate who is more at fault for the delay by "subtract[ing] the amount of delay caused by the defendant from the delay caused by the Government."  *Claxton*, 766 F.3d at 294 (quoting *Dent*, 149 F.3d at 184–85).  The Supreme Court has instructed that "different weights should be assigned to different reasons."  *Barker*, 407 U.S. at 531.  The Third Circuit has set forth three categories of delay and the corresponding weight each category carries against the government: (i) "[a] deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the government;" (ii) "[a] more neutral reason such as negligence or overcrowded courts also weighs against the Government, though less heavily;" and (iii) "a valid reason, such as a missing witness, should serve to justify appropriate delay."  *Battis*, 589 F.3d at 679 (internal quotations and citations omitted).  "By contrast, delay caused by the defense weighs against the defendant."  *Id.* at 680 (internal quotations omitted).

The parties do not dispute that out of the 46.5-month period of delay, approximately 11.5 months consisted of COVID-19 and mutually agreed upon continuances.  (Mov. Br. at 8; Gov. Opp. at 6).  These continuances stretched from January 29, 2021, to December 3, 2021

(approximately 8.5 months[9]) and post-rearrest from September 11, 2023, to December 5, 2023 (approximately 3 months).  (Mov. Br. at 8; Gov. Opp. at 6; D.E. Nos. 19, 24, 26, 28, 33, 37 & 53). Most significantly, Defendant concedes that approximately 22 of the 46.5 months are attributable to him for failing to self-surrender following his revocation of bail.  (Mov. Br. at 8).  The Court does not, in any way, minimize or condone Defendant's failure to self-surrender and abscond for 22 months.  Thus, the Court attributes this 22-month period of delay to Defendant.

The remaining 13-month period includes 27 days following Defendant's rearrest on August 15, 2023, before entry of the September 11, 2023 continuance order.  It also consists of approximately 12 months between expiration of the September 11, 2023 continuance order on December 5, 2023, through December 11, 2024, when Defendant filed the instant Motion to Dismiss.  Approximately 4 months of this period—from August 7, 2024, to December 11, 2024— are excludable, at least for purposes of the STA, under the final continuance order Judge Clark entered on August 7, 2024.[10]  Setting aside these final 4 months, the Court focuses on two distinct periods when continuances were not in effect: (i) the 27 days after Defendant's rearrest, and (ii) the time between December 6, 2023, and July 26, 2024, the day the Indictment issued.  Together, these periods comprise over 8 months during which Defendant remained in custody without a continuance and without an indictment.

The Government "regrettably" concedes that it failed to obtain another continuance after December 5, 2023, explaining that the AUSA assigned to this matter "left the office in early 2024."

---

[9]     Although these continuances were in effect for approximately 10 months, the Court subtracts the roughly 1.5-month period that coincided with Defendant's abscondment, i.e., the time between October 15, 2021, to December 3, 2021.

[10]    Although Defendant contests this period based on his purported lack of consent to the final continuance order, courts in this District have held that a defendant's "express authorization is not required, and the consent of [a d]efendant's counsel . . .  properly exclude[s] the periods covered [in applicable continuance orders]."  *See United States v. Baer*, No. 15-0417, 2019 WL 1379879, at *18 (D.N.J. Mar. 27, 2019) (citing *United States v. Green*, 516 F. App'x 113, 122 (3d Cir. 2013)), *aff'd*, 843 F. App'x 472 (3d Cir. 2021).

(Gov. Supp. at 2). The Government argues that both the former and current AUSAs on this matter engaged in extensive plea negotiations with Mr. Osuna from the date of Defendant's rearrest through June 2024, such that "when the parties failed to reach a resolution, [Defendant] was indicted less than one year after his being ordered detained." (Gov. Opp. at 6; Gov. Supp. at 2–3). Despite acknowledging that plea negotiations are not express grounds for a continuance under the STA, the Government urges the Court to consider their significance, particularly in the context of Rule 48(b), which will be assessed separately below. (Gov. Supp. at 3). Tellingly, however, the Government admits that "[t]he delay to seek an indictment might have been unwise." (*Id.*). For the following reasons, the Court finds that the approximately 8.5-month period during which Defendant remained in custody but without an indictment or continuance weighs against the Government in varying degrees.

*First*, the Court cannot discern how long the former AUSA assigned to this case remained on the matter after December 5, 2023, when the September 11, 2023 continuance order expired. (*See* Gov. Supp. at 2). In any event, it appears that between "early 2024" and March 21, 2024, Defendant's matter lingered without an AUSA. (*See id.*). This oversight underscores the Government's conceded negligence in handling this matter and weighs against the Government. (*See* Gov. Reply Supp. at 2 (admitting that "there was, for a short period, negligence on behalf of the Government")). Notably, though weighed less heavily than deliberate causes of delay, negligence "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657; *see Velazquez*, 749 F.3d at 175 (stating that negligence "weighs against the government, albeit 'less heavily' than a deliberate or bad-faith delay").[11]

---

[11]    To the extent the Court inadvertently closed Defendant's then-existing matter under Case No. 21-mj-13022, this occurrence—whether the result of "[a] more neutral reason such as negligence or overcrowded courts"—should

**Second**, despite the plea discussions that occurred between March 2024 and June 2024, the Government does not provide any authority to support this Court's favorable consideration of plea discussions in its Sixth Amendment speedy trial or Rule 48(b) analyses. (*See generally* Gov. Opp.; Gov. Supp.; Gov. Reply Supp.). The Government also fails to refute Defendant's assertion that it "never even provided a written plea agreement to Mr. Ravelo-Santos until *after* he was indicted on November 24, 2024." (*Compare* Def. Reply at 2, *with* Gov. Supp. *and* Gov. Reply Supp.). Accordingly, the Court finds that the Government's failure to secure continuances during the course of plea negotiations similarly amounts to negligence.

**Third**, even after a new AUSA appeared on March 21, 2024, the Government failed to seek a continuance and did not indict Defendant for another 4 months—all while Defendant remained in custody. (*Compare* D.E. No. 55, *with* Indictment).[12] Relevant here, the Government had written notice of an STA issue as early as May 2, 2024, when Mr. Osuna sought bail on Defendant's behalf. (D.E. No. 56). Mr. Osuna's bail submission explicitly noted how Defendant had "spent almost one year in jail on allegations that date back to 2019" without an "indictment on the underlying charges . . . [for] almost five months since the last Consent Order expired." (*Id.* at 1). The day immediately following Mr. Osuna's submission, a second AUSA appeared on behalf of the Government. (D.E. No. 57). Less than two weeks later, the Government opposed Mr. Osuna's bail application *without refuting the contention that Defendant had been improperly detained without an indictment or continuance*. (D.E. No. 58).

Moreover, after Defendant alleged STA and Sixth Amendment violations by way of an

---

be accorded less weight "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531.

[12]     In addition, when the AUSA entered an appearance in March 2024, Defendant's matter (proceeding under Case No. 21-mj-13022) had been inadvertently closed. Notwithstanding the AUSA's appearance on a closed docket, the matter did not re-open for over another month when, according to Defendant, his counsel "brought it to the Court's attention." (Def. Supp. at 1–2).

informal *pro se* letter and a formal motion to dismiss the Complaint from counsel (D.E. Nos. 61 & 63), the Government requested an extension to oppose the motion to dismiss and secured the Indictment over one month after the motion was filed and three days before its amended deadline to oppose. (D.E. No. 66). This last sequence of events weighs more heavily against the Government.

Accordingly, the Court attributes the reasons for delay as follows:

| Custody Status | Description | Dates | Approximate Time | Delay Factor |
|---|---|---|---|---|
| On Bail | COVID-19 & Mutual Continuances | January 29, 2021, to October 15, 2021 | 8.5 Months | Neutral |
| Fugitive | Abscondment | October 15, 2021, to August 15, 2023 | 22 Months | Weighted against Defendant |
| In Custody | No Continuance or Indictment | August 15, 2023, to September 11, 2023 | 27 Days | Weighted against the Government |
| In Custody | Mutual Continuance | September 11, 2023, to December 5, 2023 | 3 Months | Neutral |
| In Custody | No Continuance or Indictment | December 6, 2023, to July 26, 2024 | 7.5 Months | Weighted against the Government |
| In Custody | No Continuance | July 26, 2024, to August 7, 2024 | 12 Days | Weighted against the Government |
| In Custody | Mutual Continuance | August 7, 2024, to December 11, 2024 | 4 Months | Neutral |

Based on the allocations above, Defendant's failure to self-surrender and the resulting 22-month period of abscondment outweighs the 9 months of delay attributable to the Government, at least part of which was from negligence. Thus, the reasons for delay weigh more heavily against

Defendant in light of his admission that he failed to self-surrender as directed and remained at large until his rearrest.[13]   (*See* Mov. Br. at 3 & 8 (admitting that "22 months are attributable to [Defendant] for his failure to surrender when the Court revoked his bail")); *see, e.g.*, *Dent*, 149 F.3d at 185 (finding defendant "wholly responsible for the first 26 months of the pre-trial delay" when he remained a fugitive, the government responsible for 14 months of delay, and defendant "largely" responsible for another 13 months of delay given his use of an alias, which made it difficult for federal agents to locate defendant while he remained incarcerated by the state); *see also United States v. Vasquez-Uribe*, 426 F. App'x 131, 137 (3d Cir. 2011) ("Vasquez–Uribe remained at-large for the bulk of the pretrial delay.").

### 3.    Defendant's Assertion of His Right to a Speedy Trial

The third *Barker* factor requires a court to examine "[w]hether and how a defendant asserts his [speedy-trial] right," 407 U.S. at 531, including "the frequency and force" of such assertions, *id.* at 529.  The fundamental "right to a speedy trial is unique in its uncertainty as to when and under what circumstances it must be asserted or may be deemed waived."  *Id.  Barker* rejected a rigid rule that a defendant waives his speedy-trial right "for any period prior to which he has not demanded a trial."  *Id.*  Instead, *Barker* noted that "[c]ourts should indulge every reasonable presumption against waiver . . . [and] not presume acquiescence in the loss of fundamental rights." *Id.* at 525–26 (internal quotations omitted).  The Third Circuit has instructed that, "while the defendant bears 'some responsibility to assert a speedy trial claim,' the prosecution retains the

---

[13]      It is unclear whether the Government had an obligation to pursue Defendant with reasonable diligence during his period of abscondment based on a criminal complaint rather than an indictment.  *See Doggett*, 505 U.S. at 656 (noting that "if the Government had pursued Doggett with reasonable diligence **from his indictment to his arrest**, his speedy trial claim would fail" (emphasis added)); *see also Velazquez*, 749 F.3d at 180.  As noted above, Defendant concedes that 22 months of delay are attributable to him (*see* Mov. Br. at 3 & 8), and the Government proffered details regarding its efforts to locate Defendant and the myriad of ways in which Defendant allegedly hid his identity.  (Gov. Supp. at 6).  These alleged concealments are consistent with Defendant's admitted failure to self-surrender and the ultimate location of his rearrest within the District of New Jersey.  (Def. Supp. at 4).

burden to show the knowing and voluntary waiver of a fundamental right. . . . Thus a defendant's limited responsibility to assert his speedy trial right exists alongside the government's overarching burden to prove waiver of that fundamental right." *Velazquez*, 749 F.3d at 182.

A defendant represented by counsel may show that he asserted his right to a speedy trial by identifying "a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success." *Battis*, 589 F.3d at 681. On the other hand, it is "less convincing" when a represented defendant files "informal correspondence" with the court. *Id.* In addition, "[w]hen a defendant requests a speedy trial, but 'through contrary actions . . . evidences an unwillingness to commence with the trial requested, [the] request carries minimal weight.'" *Id.* (quoting *Hakeem*, 990 F.2d at 765).

Here, the Court finds Defendant sufficiently asserted his right to a speedy trial on multiple occasions. As early as May 2, 2024, Mr. Osuna sought bail on Defendant's behalf and explicitly noted that Defendant had been in custody without an indictment or continuance for almost 5 months. (D.E. No. 56). On May 15, 2024, Defendant wrote to the Court *pro se* alleging, among other things, violation of his right to a speedy trial under the Sixth Amendment. (D.E. No. 63). On June 17, 2024, Mr. Osuna filed a formal motion to dismiss for alleged violation of the STA. (D.E. No. 64). In addition, following the Indictment, on November 4, 2024, Defendant wrote to the Court *pro se* asserting his right to a speedy trial. (D.E. Nos. 76 & 77). Shortly thereafter, the Court scheduled trial to commence on January 13, 2025. (D.E. No. 78). On December 11, 2024, Defendant filed the instant Motion to Dismiss the Indictment for alleged violation of his right to a speedy trial. (Mot.). Defendant never requested an adjournment of the trial date; nor did he express an unwillingness to go to trial. For these reasons, the Court finds that Defendant made consistent, albeit at times informal, assertions of his right to a speedy trial. Accordingly, this factor

weighs in Defendant's favor.

### 4.    Prejudice to Defendant

The final factor in the *Barker* analysis is "the degree of prejudice suffered by a defendant because of any inordinate delay in bringing him to trial." *Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 384 (3d Cir. 2022) (citing *Hakeem*, 990 F.2d at 760).   The Supreme Court has identified three types of harm that can occur from unreasonable delay: (i) "oppressive pretrial incarceration;" (ii) "anxiety and concern of the accused"; and (iii) "'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (alteration in original) (quoting *Barker*, 407 U.S. at 532).   "With respect to all its various types, the burden of showing prejudice lies with the individual claiming the violation." *Hakeem*, 990 F.2d at 760.

In *Doggett*, the Supreme Court held that "consideration of prejudice is not limited to the specifically demonstrable," and allowed defendants to claim prejudice without providing "affirmative proof of particularized prejudice."   505 U.S. at 654.   Accordingly, because "time's erosion of exculpatory evidence and testimony" can hinder a defendant's ability to prove that his defense was impaired by a delay, the Court stated that "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."   *Id.* at 655–56.   In *Battis*, the Third Circuit held that "prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government." 589 F.3d at 683.   *Battis* reasoned that "[a]fter such a long delay, witnesses become harder to locate and their memories inevitably fade."   *Id.*   In addition, *Battis* and *Doggett* recognized that the Government may mitigate or rebut this presumption if it shows that defendant acquiesced in the delay, or "affirmatively prove[s] that the delay left [the defendant's] ability to defend himself

20

unimpaired." *Battis*, 589 F.3d at 682 (quoting *Doggett*, 505 U.S. at 658 & n.1).

Defendant lists numerous ways in which he has been prejudiced from the delay in this matter, including: (i) witness unavailability, (ii) faded memories, (iii) the inability to reconstruct events, (iv) strategic disadvantage, (v) anxiety and oppressive pre-trial conditions, and (vi) reputational damage. (Mov. Br. at 10).

First, Defendant "believe[s]" an unavailable witness resides abroad in Germany. (Def. Supp. at 5). Defendant maintains this witness would have testified to Defendant's non-criminal association with Mr. Argeni Castro-Taveras—the individual who Defendant allegedly conspired with as set forth in the Complaint. (*Id.*; *see* D.E. No. 1). The unavailable witness appears to be a friend and mutual acquaintance of both Defendant and Mr. Castro Taveras. (Def. Supp. at 5). Notwithstanding these assertions, Defendant has not provided any indication as to the unavailable witness's knowledge regarding the current pending charge in the Indictment: possession with intent to distribute cocaine. (*See generally* Def. Supp.); *see also United States v. Shulick*, 18 F.4th 91, 103 (3d Cir. 2021) (finding that the district court "correctly concluded, a conclusory claim of this sort falls short of what is required of a defendant to successfully establish prejudice"). Moreover, Defendant has not proffered whether he made any attempt to preserve the unavailable witness's testimony. (*See generally* Def. Supp.). For these reasons, Defendant has not met his burden to establish prejudice based on an allegedly unavailable witness. *See Shulick*, 18 F.4th at 103 (affirming the district court's determination that "Shulick failed to offer sufficient factual support for this supposed prejudice, because he did not explain what Wright's testimony would be or even that it would be favorable, despite having interviewed him before he became unavailable"); *Clarke*, 2022 WL 17691562, at *5 (finding no error in denying motion to dismiss based on alleged Sixth Amendment violations where defendant failed to indicate whether he made an attempt to

preserve the witness's testimony).

Putting the unavailable witness aside, the Court does not doubt that in over five years since the alleged incident in question (i.e., October 2019), memories may fade or the ability to construct events and strategize may prove more difficult. However, Defendant's assertions are conclusory, and, when viewed in context, the Court cannot ignore Defendant's 22-month abscondment for which he takes responsibility. (*See* Mov. Br. at 3 & 8); *see also Hakeem*, 990 F.2d at 763 ("General allegations that witnesses' memories have faded are insufficient to create prejudice."); *see also United States v. Mensah-Yawson*, 489 F. App'x 606, 612 (3d Cir. 2012) (finding no actual prejudice where defendant "provided nothing from which [the court] c[ould] gauge his claim that his pretrial confinement impaired his ability to assist in his defense"). Indeed, the defensive disadvantages Defendant allegedly faces can be viewed in-part as the predictable consequences of his near two-year flight. Thus, even assuming the 46.5-month period of delay in this case is presumptively prejudicial under *Battis*, the Court agrees with the Government that Defendant "bears primary," or at least the majority of "responsibility for any prejudice he allegedly suffered." (Gov. Supp. at 7).

Next, the Court assesses whether Defendant has suffered prejudice from oppressive pre-trial conditions, anxiety, and reputational damage. (Mov. Br. at 10). In his supplemental submission, Defendant promised to provide forthcoming "sworn testimony to the Court" to expand on the "current status of his mental health and the oppressive conditions at the Essex County Correctional Facility which he has endured over the last seventeen months." (Def. Supp. at 5).

Relevant here, the Third Circuit has rejected a bright-line rule that 13 or 14.5 months of pretrial incarceration "demonstrates *per se* oppressive pretrial delay." *Hakeem*, 990 F.2d at 761. In doing so, it acknowledged that the creation of a bright-line rule would render it "difficult to

avoid a holding of prejudicial delay in any case in which the defendant suffered pre-trial incarceration and the delay was long enough to trigger inquiry." *Id.* at 762; *see also Mensah-Yawson*, 489 F. App'x at 612 ("The delay in this case is nearly identical to that in *Hakeem*, and consequently we will not infer prejudice solely from the length of delay."). Moreover, the Third Circuit noted that "though time alone may, in some cases, rise to the level of 'oppressive pretrial incarceration,' credit for time served 'mitigate[s] the potential oppressive effects of . . . incarceration.'" *Hakeem*, 990 F.2d at 762 (quoting *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984) (alterations in original).

In addition, and similarly, the Third Circuit has cautioned that "[v]ague allegations of anxiety are insufficient to state a cognizable claim." *Id.* Rather, "a defendant must show that his anxiety extended beyond that which 'is inevitable in a criminal case.'" *Id.* (quoting *United States v. Dreyer*, 533 F.2d 112, 116 (3d Cir. 1976)). "In order to reach that level, the [defendant] must produce evidence of psychic injury." *Id.* (citing *Dreyer*, 533 F.2d at 115–16). Even if a defendant experiences an "emotional episode" or has other indicia of anxiety, he must alert the district court prior to its decision. *See United States v. Villalobos*, 560 F. App'x 122, 127 (3d Cir. 2014) (finding that this factor weighed in favor of defendant, but was "given diminished weight, due to his failure to inform the [d]istrict [c]ourt when it made its decision").

Here, notwithstanding the Court's request for supplemental submissions on the issue of prejudice, Defendant has not presented any evidence—psychiatric or otherwise—to shed light on his allegedly oppressive incarceration, anxiety, or reputational harm. Although in some cases "time alone may[] . . . rise to the level of oppressive pretrial incarceration," *Hakeem*, 990 F.2d at 762, Defendant has not cited any comparable case that found a Sixth Amendment speedy trial violation involving a defendant's pretrial incarceration notwithstanding a period of abscondment

for more than double the period of incarceration (i.e., 22 months of abscondment versus 8.5 months of incarceration through issuance of the Indictment). For these reasons, Defendant's purportedly oppressive incarceration, anxiety, and reputational harm fall short of establishing prejudice. *See, e.g.*, *Villalobos*, 560 F. App'x at 127 ("Detained for approximately sixteen and a half months prior to trial, similar to the length of detention in *Hakeem*, [defendant] points to no sub-standard conditions of imprisonment that would render it oppressive. We therefore conclude that he has not established this type of prejudice."); *United States v. Green*, No. 21-3171, 2022 WL 4244275, at *5 (3d Cir. Sept. 15, 2022) ("[W]hile Green has alleged cognizable harms, including health problems, losing his job, and strain on his relationships, the [d]istrict [c]ourt found that these were not supported with specific evidence, and its finding was not clearly erroneous." (internal citations omitted)).[14]

Thus, for the reasons set forth above, Defendant has not met his burden to establish prejudice. Accordingly, the fourth *Barker* factor weighs against Defendant.

\* \* \* \*

In sum, although the length of delay measured from the date of Defendant's initial arrest is presumptively prejudicial under the first *Barker* factor, the Court finds that, when considered together, the second and fourth factors—reasons for delay and prejudice to Defendant—weigh against Defendant and in favor of the Government. By contrast, the third factor—Defendant's assertion of his right to a speedy trial—weighs in favor of Defendant. In balancing the four *Barker* factors, the Court finds no violation of Defendant's Sixth Amendment right to a speedy trial.

---

[14]     Moreover, in the event the Government continues to pursue a possession charge and a jury finds Defendant guilty, time served from Defendant's pre-trail incarceration may mitigate the length of any sentence. *See Hakeem*, 990 F.2d at 762 ("Credit for time served cannot cure every unexcused delay but where the defendant has not pointed to any evidence of additional, specific prejudice flowing from the delay, we are unwilling to infer prejudice based on incarceration that the defendant would ultimately have had to serve solely because fourteen and one-half months had elapsed between arrest and trial.").

### C.    Rule 48(b)

In the alternative, Defendant moves for dismissal under Federal Rule of Criminal Procedure Rule 48(b), which permits dismissal of an indictment "if unnecessary delay occurs in . . . presenting a charge to a grand jury" or "bringing a defendant to trial." Fed. R. Cim. P. 48(b). The decision to grant or deny a Rule 48(b) motion is discretionary. *United States v. House*, Crim. Nos. 09-0273, 10-0021, 2015 WL 4111457, at *25 (W.D. Pa. July 8, 2015) (citing *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 526 (3d Cir. 1985)). The Third Circuit has noted that Rule 48(b) is both "a vehicle for enforcing a defendant's speedy trial right" and "also a restatement of the court's inherent power to dismiss a case simply for want of prosecution." *Dreyer*, 533 F.2d at 113 n.1 (citing 3 C. Wright, Federal Practice and Procedure §§ 814, at 309 (1969)).

Relevant here, dismissal under Rule 48(b) may be granted even when not constitutionally required. *See Pollard v. United States*, 352 U.S. 354, 361 n.7 (1957) (noting that Rule 48(b) provides for enforcement of the Sixth Amendment's speedy-trial right); *see also United States v. Watkins*, 339 F.3d 167, 180 (3d Cir. 2003) (Nygaard, J., concurring) (stating that "[t]he District Court is empowered, when conditions warrant, to dismiss an indictment for failure to prosecute, even where the delay is not of constitutional proportions" and noting that "[i]f the Government does not live up to its assurances to implement safeguards to prevent future mistakes, the courts are not without a remedy"). In addition, Rule 48(b) may apply in situations where the STA has not been violated. *See House*, 2015 WL 4111457, at *25; *see also* Fed. R. Civ. P. 48(b) advisory committee's note to 2002 amendment ("Rule 48(b), of course, operates independently from the Act.").

The Court notes that the circumstances before it appear rather unusual. Neither the parties nor the Court have located a case involving similar facts—namely, one that involves a criminal complaint and a period of abscondment, followed by the defendant's rearrest and approximately

8.5 months of incarceration *before* an indictment issued without appropriate continuances in place.

Although the events that unfolded after Defendant's rearrest on August 15, 2023, together with Defendant's failure to establish prejudice, do not arise to a constitutional violation under *Barker*'s framework, it is not lost on this Court that Defendant has been subject to months of pre-indictment incarceration based on a years-old Complaint without sufficient continuances. As the Government concedes, for at least a portion of this period, "there was[] . . . negligence on behalf of the Government." (Gov. Reply Supp. at 2). Moreover, the matter under which the Government initially prosecuted this action, Case No. 21-mj-13022, remained inadvertently closed for nearly four months. While Defendant alleged STA and constitutional violations both *pro se* and by way of counsel multiple times in May and June of 2024 (D.E. Nos. 56, 63–64), the Government never responded to Defendant's claims. Instead, over two months after the first alleged violations, it filed the July 26, 2024 Indictment on a separate charge and averted what would have been a clear STA violation on the charge in the Complaint. Notwithstanding Defendant's abscondment, the Court simply cannot ignore these facts that unnecessarily delayed bringing this matter to a grand jury and bringing Defendant to trial while he remained in custody.[15]

Thus, although the unique facts of this case do not give rise to a constitutional violation under the Sixth Amendment, the Court exercises its discretion to dismiss the Indictment *without prejudice* under Rule 48(b).

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in-part** and **DENIES in-part** Defendant's

---

[15]    As noted above, although the Government asks the Court to consider plea negotiations that occurred after Defendant's rearrest (Gov. Supp. at 3), it has not provided any authority upon which the Court must favorably consider such negotiations in the context of dismissal under Rule 48(b). Without detracting from the positive aspects of plea negotiations, the Court does not condone the Government's failure to obtain appropriate continuance orders during this period. Indeed, if the Court accepts the plea discussions as justification for the events that unfolded in this case after Defendant's rearrest, it could pave a path for future abuses of the resolution process.

Motion to Dismiss the Indictment.  The Court **DENIES** Defendant's Motion to Dismiss the Indictment for alleged violations of the Speedy Trial Act and his Sixth Amendment right to a speedy trial.  The Court **GRANTS** Defendant's Motion to Dismiss the Indictment *without prejudice* pursuant to its authority under Federal Rule of Criminal Procedure 48(b).  An appropriate Order follows.

Dated: April 30, 2025                                    *s/ Esther Salas*
                                                         **Esther Salas, U.S.D.J.**